**AKERMAN LLP**
666 Fifth Avenue, 20th Floor
New York, New York 10103
Tel: (212) 880-3800
Fax: (212) 880-8965
E-mail: Michael.Marsh@akerman.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PURINE PHARMA, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>WE CARE DISTRIBUTOR, INC.,<br><br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Purine Pharma, LLC ("Plaintiff" or "Purine Pharma"), files this Complaint against defendant We Care Distributor, Inc. ("Defendant" or "We Care") and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing arising from We Care's failure to pay the amounts due and owing to Purine Pharma within thirty days of shipment as required by the parties' private label agreement and the payment terms set forth on both the purchase orders issued by We Care and the corresponding invoices provided by Purine Pharma.

2. We Care's payment is overdue and there is no excuse for We Care's continued failure to pay Purine Pharma, which violates the payment terms of the parties' agreement.

3. Moreover, it is clear that We Care's failure to pay is deliberate. At the outset, to avoid payment We Care claimed that there were issues with the goods that were shipped by

{41284937;1}

Purine Pharma. However, even after those issues were largely resolved and a credit was offered for a purportedly defective lot, We Care continued to withhold payment. Rather than behaving as an honest broker seeking a resolution for minor issues, We Care chose to capitalize on an easily rectified problem to extract concessions from Purine Pharma while avoiding its obligation to pay. For example, after We Care noted that only one lot was defective, We Care insisted on conducting an expanded investigation of all of the products that had been shipped before it would issue payment. We Care also asked Purine Pharma to provide documentation that was not required by the agreement or necessary to correct the purported problem.

4. We Care's motives are quite clear. We Care has consistently failed to issue on time payments. Even where, as here, We Care was offered the option to remit payment in installments, it failed to cure the outstanding amount or make any effort to do so.

5. Purine Pharma seeks damages in an amount to be determined at trial, but believed to exceed **$131,615.77** together with attorneys' fees and costs.

## THE PARTIES

6. Plaintiff Purine Pharma is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 144 Kingsbridge Road East, Mt. Vernon, New York, 10550. Purine Pharma is a wholly-owned subsidiary of Geritrex Holdings, Inc.

7. Defendant We Care is a corporation organized under the laws of the State of Tennessee with its principal place of business located at 5764 Old Hickory Blvd., Hermitage, Tennessee, 37076.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over Purine Pharma's claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a). Purine Pharma is subject to general and personal jurisdiction in New York. Defendant We Care regularly conducts business in New York and has expressly consented to personal jurisdiction in New York. We Care has also waived its right to challenge any proceeding involving or related to the matters set forth herein on the basis of lack of jurisdiction pursuant to Section 17 of the Private Label Agreement, as amended.

**FACTUAL ALLEGATIONS**

**Purine Pharma's Private Label Manufacturing for We Care**

10. Purine Pharma is, among other things, a private-label manufacturer of generic over-the-counter high quality non-prescription products. As a private label manufacturer, Purine Pharma manufactures generic products on behalf of certain brands, which are produced according to the specifications set forth in a private label agreement. For its private label clients, Purine Pharma produces finished goods that contain the packaging, artwork, trade dress and general design and appearance of that client's brand.

11. Although the end product is manufactured by Purine Pharma, it is sold at retail under the private label client's brand name.

12. We Care entered into a private label manufacturing agreement with Purine Pharma.

13. On March 5, 2016, Purine Pharma and We Care entered into an initial private label agreement (the "First PLA"). A true and correct copy of the First PLA is attached as "**Exhibit A**." Under the First PLA, We Care authorized Purine Pharma to manufacture generic private label products under the 'We Care' and 'We Zen' trademarks owned by We Care. First PLA at 1.

14. Each of the 'We Care' and 'We Zen' products Purine Pharma agreed to manufacture were set forth on Schedule A to the First PLA. As a part of the manufacturing process, Purine Pharma also agreed to ensure that all of We Care's private label products complied with federal, state, and local regulations. First PLA § 3.

15. In addition to requiring regulatory compliance, the relevant part of the First PLA set out specific quality control standards, including, among other things, requiring Purine Pharma to secure additional testing in the event that any product failed quality assurance testing. *Id.* § 6.

16. The First PLA did not contain any term that excused We Care from making payment or that permitted We Care to condition payment on some other concession after We Care received a shipment from Purine Pharma.

17. On May 3, 2016, the parties entered into an amended private label agreement (the "Second PLA"). A true and correct copy of the Second PLA is attached as "**Exhibit B**." Like the First PLA, the Second PLA authorized Purine Pharma to manufacture the same high quality generic 'We Care' and 'We Zen' products, which are set forth on Schedule A to that agreement.

18. Unlike the First PLA, the Second PLA differs in two key areas that are directly related to this dispute. First, under the Second PLA Purine Pharma is no longer responsible for paying a $0.15 per unit cost as an administrative handling fee. *Compare* First PLA § 6 *with* Second PLA § 6. Instead, in the event a product fails quality assurance testing, Purine Pharma is

responsible for paying for up to two additional quality assurance tests until the parties agree that the quality assurance standards have been met. Second PLA § 6.

19. In addition, unlike the First PLA, the Second PLA is governed by New York law. *Compare* First PLA § 17 *with* Second PLA § 17. The provisions regarding jurisdiction and venue remain unchanged. *Id.*

20. Pursuant to the terms of the Second PLA, Purine Pharma shipped goods to We Care at We Care's request. We Care issued Purchase Order 1014 on March 8, 2016 (the "Purchase Order") for goods set forth on Schedule A to the Second PLA. A true and correct copy of the Purchase Order is attached as "**Exhibit C**." As is customary, the Purchase Order varied as to the specific items ordered and the quantity(ies) of those items requested. Based upon the Purchase Order, Purine Pharma produced and shipped the requested products and issued a corresponding invoice putting We Care on notice of exactly what was being provided. Each invoice contained the item number, description, quantity invoiced, unit measurement, rate (price) per unit, and total price for each item ordered.

21. For the Purchase Order, Purine Pharma issued Invoice Nos. 24-30 beginning on May 24, 2016 and ending on July 21, 2016 (the "Invoices"). A true and correct copy of the Invoices is attached as "**Composite Exhibit D**."

22. Consistent with the Purchase Order, the Invoices required payment within 30 days of shipment. More importantly, the Invoices did not excuse payment once an item was shipped by Purine Pharma.

23. Accordingly, We Care was required to meet the following thirty-day payment schedule based on the invoice number and invoice date:

(a) Invoice No. 24, dated May 24, 2016, required payment by June 23, 2016

(b) Invoice No. 25, dated May 26, 2016, required payment by June 25, 2016.

(c) Invoice Nos. 26 - 28, dated June 24, 2016, required payment by July 24, 2016.

(d) Invoice Nos. 29 & 30, dated July 21, 2016, required payment by August 20, 2016.

### We Care Breaches the Payment Terms Set Forth on the Invoices

24. We Care failed to remit the payments due under the Invoices within 30 days as required. Instead, We Care remitted a partial payment of $64,000 and another partial payment of $30,168.00, both to be applied against invoices 26 -28. We Care has not made any payments against Invoices 29 -30.

25. $131,615.77 of the total balance remains unpaid.

26. With respect to the remaining balance, We Care raised a dispute in a series of letters beginning on December 2, 2016 about the quality of the shipment and a "missing item." A true and correct copy of the December 2, 2016 letter from We Care's counsel is attached as "**Exhibit E**." None of the issues cited by We Care excused We Care from making payment. And, in any event, We Care did not reject the shipment. Therefore, payment was due as required.

27. To avoid payment, We Care first claimed that Purine Pharma's failure to ship Certificates of Analysis along with some of the liquid dosage products was a basis for withholding the remaining payment. Tellingly, despite repeated assurances, We Care did not remit the past due balance even after the Certificates of Analysis were provided by Purine Pharma.

28. As an alternate basis to withhold payment, We Care also claimed a "missing item." According to We Care, the absence of the 60ml/2oz Children's Grape Suspension set forth

in the second page of the Purchase Order impaired We Care's ability to fulfill another contract between We Care and one of its customers.  However, far from being missing We Care had been informed well in advance that this product would not be available and, as a result, the outstanding balance did not include a charge for the 60ml/2oz Children's Grape Suspension. More importantly, We Care was never invoiced for this product. *See generally* Invoices.

29.    Lastly, We Care claimed that it conducted independent laboratory testing on the Children's Cherry Suspension, Lot #60514, and that the suspension failed an independent laboratory test. Although none of these issues relieved We Care of its obligation to remit payment for the shipment, We Care demanded an expanded investigation of the entire shipment, an explanation for why the product failed to meet the appropriate standards, and an explanation from Purine Pharma about what it would do to prevent future occurrences.  What We Care did not do is make the required payment. Instead, We Care affirmed the outstanding balance and offered a possible payment once Purine Pharma complied with its additional demands. Again, Purine Pharma offered to accept a complete return of the product and to issue a credit against the remaining balance.  We Care continued to use stall statics.

30.    In its subsequent communication, dated December 20, 2016, We Care also raised the issue of Purine Pharma's payment of a brokerage commission to a third party.  A true and correct copy of We Care's December 20, 2016 letter is attached as "**Exhibit F**." We Care was not, however, a party to that contract. More importantly, We Care had no standing to demand payment under that contract especially given that Purine Pharma's obligation to pay the commission only arose once it received full payment from We Care, which had not yet occurred.

31. Even so, in a good faith effort to resolve We Care's concerns, Purine Pharma provided the Certificates of Analysis as requested and offered We Care a credit for Lot #60514 upon return of the product to Purine Pharma.

32. As an additional measure of good faith, Purine Pharma proposed a three-month payment schedule for the balance due where We Care would pay three installments (50% of the remaining balance upfront followed by two installments of 25%) to cure the past due amount. In addition, in response to We Care's request for a "Root Cause" investigation regarding the failure for Lot #60514 to satisfy agreed-upon quality standards, Purine Pharma agreed to conduct the investigation as soon as We Care supplied the additional information that had been requested. A true and correct copy of Purine Pharma's February 7, 2017 letter is attached as "**Exhibit G**."

33. On March 10, 2017, We Care provided a follow up letter cataloguing the issues that it believed to be a basis for withholding payment while offering yet another promise to make a payment arrangement at some point in the future. A true and correct copy of We Care's March 10, 2017 letter is attached as "**Exhibit H**." This letter followed Purine Pharma's letter offering to resolve every issue cited by We Care, but completely failed to acknowledge that a full resolution had been offered. Notwithstanding its willful and deliberate oversight of a proposed resolution, We Care's letter did acknowledge that it has an outstanding balance that it is obligated to pay. Moreover, it is clear from We Care's letter that its primary aim is to avoid payment by citing issues that in and of themselves would not permit We Care to withhold payment.

34. We Care has habitually taken advantage of Purine Pharma's good faith purposefully dangling a promise of payment sometime in the future only to fail to make payment or propose a payment arrangement.

35. For its part, Purine Pharma has fully and completely performed all of its obligations under the Second PLA and its shipping obligations under the Invoices.

36. All conditions precedent to bringing this action have been performed, have been waived, or have occurred.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

37. Purine Pharma repeats and realleges the allegations contained in paragraphs 1 through 36 above, as if fully set forth herein.

38. The Second PLA authorizes Purine Pharma to manufacture each of the goods set forth in Schedule A at We Care's request.

39. Thereafter, each invoice is a separate agreement that contains the specific combination of goods that are being produced pursuant to the Second PLA by item number, description, quantity invoiced, unit measurement, rate (price per unit), and total amount due per item.

40. The Invoices also contain Net 30 payment terms.

41. The Invoices are, therefore, valid enforceable agreements between Purine Pharma and We Care supported by good and valuable consideration on Purine Pharma's behalf.

42. Purine Pharma has fulfilled all of its material obligations under the Invoices, including: (i) shipping the available goods set forth on the Purchase Order, (ii) providing Certificates of Analysis as requested, (iii) offering We Care a credit for defective Lot # 60514, and (iv) preparing to initiate a Root Cause investigation at We Care's request. As a result, Purine Pharma is not in breach of its obligations under the Second PLA or the Invoices.

43. We Care has materially breached the terms of the Invoices by, among other things, failing to remit payment within 30 days of the date of shipment as required.

44. We Care has also materially breached the Invoices by demanding additional documentation from Purine Pharma, including a certification from Purine Pharma's Regulatory Director, and attempting to force Purine Pharma to pay a commission under an agreement that We Care is not a party to as a condition for payment of the past due amount.

45. We Care's conduct, as described above, violates the express terms of each invoice attached hereto.

46. Purine Pharma has repeatedly demanded that We Care cure its breach of the Invoices by remitting payment.

47. In response, We Care has only indicated that it will make some arrangement to pay, but to date no such arrangement has been proposed and payment is overdue.

48. As a direct and proximate result of We Care's breach of the terms of the Invoices, Purine Pharma has suffered damages in an amount to be determined at trial, including, but not limited to, the balance due and owing under the Invoices, pre and post-judgment interest, and Purine Pharma's reasonable attorneys' fees and costs associated with bringing this action.

## SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

49. Purine Pharma repeats and realleges the allegations contained in paragraphs 1 through 36 above as if fully set forth herein.

50. We Care has been enriched by its misconduct.

51. Specifically, We Care received shipments from Purine Pharma pursuant to the Invoices.

52. Aside from Lot #60514, which Purine Pharma is willing to credit against the remaining balance upon return of the product, none of the goods that were shipped by Purine Pharma have been rejected nor could they be at this time.

53. Given that We Care has not paid Purine Pharma for all of the goods it received under the Invoices, We Care has been enriched at Purine Pharma's expense.

54. We Care has knowingly accepted the benefit it received from Purine Pharma and has plainly acknowledged that payment is due although it has failed to make full payment.

55. Under the circumstances, equity and good conscience require We Care to make a full payment to Purine Pharma.

56. As a direct and proximate result of We Care's failure to make payment for the goods that it has received, Purine Pharma has suffered damages in an amount to be determined at trial, including, but not limited to, the balance due and owing under the Invoices, pre and post-judgment interest, and Purine Pharma's reasonable attorneys' fees and costs associated with bringing this action.

## THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

57. Purine Pharma repeats and realleges the allegations contained in paragraphs 1 through 36 above as if fully set forth herein.

58. Each invoice (defined as the Invoices) constitutes a separate agreement between Purine Pharma and We Care.

59. Purine Pharma fully performed its obligations under the Invoices.

60. The clear and unambiguous terms of the Invoices required payment within thirty (30) days of shipment.

61. Purine Pharma's willingness to fill each purchase order submitted by We Care pursuant to the Second PLA is premised on an implied covenant of good faith and fair dealing that requires We Care to manage its business affairs in a manner that benefits the parties' business relationship, including on time payment. In fact, Purine Pharma is only repaid for its

manufacturing costs when a product has been shipped and invoiced to the customer, and that customer remits payment.

62. Since at least August 2016 when payment was due under the final invoice, We Care has managed its affairs to the detriment of Purine Pharma.

63. We Care has breached the implied covenant of good faith and fair dealing by, among other things: (i) withholding full payment, (ii) conditioning its required payment on additional concessions from Purine Pharma that were not contemplated under the Second PLA or the Invoices, (iii) claiming that the purported issues with the shipment provided a wholesale excuse for nonpayment, and (iv) with full knowledge that it was in fact obligated to make payment, falsely stating that it would either remit payment or propose a payment arrangement only to fail to meet its own deadlines for a proposal for payment even as recently as March 24, 2017. A true and correct copy of the March 24, 2017 email provided on behalf of We Care by Gregory Gogo, Esq., is attached as "**Exhibit I**."

64. We Care has failed to remit payment in bad faith with full knowledge of the adverse consequences that its failure to make payment would have on Purine Pharma.

65. As a result of We Care's breach of the implied covenant of good faith and fair dealing, described above, Purine Pharma has suffered damages in an amount to be determined at trial, including the balance due and owing under the Invoices, pre and post-judgment interest, and Purine Pharma's reasonable attorneys' fees and costs associated with bringing this action.

**PURINE PHARMA DEMANDS A TRIAL BY JURY FOR ALL CLAIMS SO TRIABLE**

|  |  |
|---|---|
| Dated: March 28, 2017<br>New York, New York | **AKERMAN LLP**<br><br>*/s Michael C. Marsh*<br>Michael C. Marsh<br>666 Fifth Ave., 20th Floor<br>New York, New York 10103<br>Tel: (212) 880-3800<br>Fax: (212) 880-8695 |